**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| PETROLEUM MARKETING GROUP, INC., Plaintiff<br><br>vs.<br><br>UNIVERSAL PROPERTY SERVICES, INC. et al.,<br><br>    Defendants. | Civil Action No.: 3:22-cv-02410-GC-RLS |

**DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO QUASH PLAINTIFF'S
SUBPOENAS OR, IN THE ALTERNATIVE, FOR PROTECTIVE ORDER**

Defendants Universal Property Services, Inc. ("**Universal**") and Shamikh Kazmi ("**Kazmi**") (collectively, "**Defendants**") respectfully submit this Memorandum of Law in support of their Motion to Quash the Nonparty Subpoenas *Duces Tecum* issued to TD Bank, N.A. and Bank of America, N.A. by Plaintiff Petroleum Marketing Group, Inc.'s ("**PMG**" or "**Plaintiff**") or, in the alternative, for a protective order.

## I.    INTRODUCTION

The Court should quash the overbroad subpoenas issued to TD Bank, N.A. and Bank of America, N.A. (the "**Subpoenas**") because they broadly demand documents unrelated to this litigation. This case arises from a broken contract (the "**Contract**") between PMG and Universal. The issues are: (1) whether PMG breached the Contract by terminating it without notice; (2) whether, in light of PMG's material breach, Universal should be compelled to pay the sums demanded by PMG; and (3) whether PMG should be held responsible for Universal's lost business.

The Subpoenas seek *all* documents about every transaction in and out of all bank accounts that Universal and its principals used. These documents have no bearing on whether PMG

breached the Contract or whether Universal owes PMG any amount.  PMG will argue that this information is required to quantify Universal's lost profits claim.  The Subpoenas, however, go far beyond documents necessary to quantify Universal's lost profits.  They request, for example, information about *every* bank account for which *its principals* are signatories.  This demand goes far beyond any effort to value Universal's business.  It is harassment.  Defendants respectfully request that Court quash the Subpoenas, or, in the alternative, enter a protective order that limits their scope.

## II.   FACTS AND BACKGROUND

In February 2021, Universal and PMG entered into the Contract, an Unbranded Sales Agreement pursuant to which PMG agreed to sell fuel to Universal, fuel that PMG knew Universal would resell to Universal's customers. In July 2021, PMG demanded that Universal pay prices in excess of those specified in the Contract. As the parties debated the propriety of PMG's demanded price increases, Universal continued to draw fuel with PMG's consent. On or about August 10, 2021, PMG abruptly shut off Universal's ability to purchase fuel and terminated the Contract. PMG then filed suit for amounts that it claims are owed for fuel that it sold to Universal prior to improperly terminating the Contract.

PMG breached the Contract by failing to provide 60-days' notice prior to termination, and Universal has asserted a breach of contract counterclaim.  Following PMG's abrupt termination of Universal's physical ability to draw fuel from PMG's pumps and improper termination of the Contract, Universal lost the anticipated profits that it would have earned over the remainder of the Contract.

On September 8, 2022, PMG served the Subpoenas, attached as Exhibits A and B respectively. The 11 categories of requested documents ("**Items**") sought in each Subpoena are identical. The Subpoenas seek the following documents:

- All of Universal's bank account statements, account information, loan or financing applications, loan and account agreements, financial information reflecting assets, profits, liabilities and debts, and balance sheets (Item 1);

- All documents identifying or listing other accounts for which Shamikh Kazmi and Syed Kazmi (co-owners of Universal) are authorized signatories (Item 2);

- All documents related to all payments that Universal ever made or received (Items 3 and 4);

- All documents related to all deposits and withdrawals that Universal ever made (Items 5 and 6);

- All documents that relate to any transactions between Universal and its freight haulers (Items 8 and 9); and

- All communications with Universal and its agents (Item 11).

The only Item related to PMG's claims is Item 7: All documents related to transactions between Universal and PMG. With respect to the remainder of the Items, PMG has made no effort to tailor the requests to the needs of this case. The Subpoenas should therefore be quashed or, at a minimum, limited in scope by a protective order.

### III.    LEGAL STANDARD

District courts have broad discretion to manage discovery. *Sempier v. Johnson & Higgins*, 45 F.3d 724, 734 (3rd Cir. 1995). Discovery may encompass that which "appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). "However, while the scope of discovery is broad, 'it is not unlimited ... and should not serve as a fishing expedition.'" *Hashem v. Hunterdon Cnty.*, No. CV158585FLWDEA, 2017 WL 2215122, at *2

(D.N.J. May 18, 2017), quoting *Saller v. QVC, Inc.*, No. 15–2279, 2016 WL 8716270, at \*5 (E.D. Pa. June 24, 2016).

Subpoenas issued under Federal Rule of Civil Procedure 45 must "fall within the proper scope of discovery" permitted under Rule 26(b)(1). Rule 26(b)(1) provides that parties may obtain discovery related to non-privileged matters that are both relevant *and* proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1).

Rule 45 requires courts to "quash or modify a subpoena that . . . subjects a person to undue burden." *Id*. (quoting Fed. R. Civ. P. 45(d)(3)(A)(iv)); *see also* Fed. R. Civ. P. 26(c) (court may issue an appropriate order where justice so requires to protect a person from annoyance, embarrassment, oppression, or undue burden or expense). In assessing the burden on the subpoenaed entity against the benefit conferred on the serving party, the Court may consider the following factors: "(1) the party's need for the production; (2) the nature and importance of the litigation; (3) relevance; (4) the breadth of the request for the production; (5) the time period covered by the request; (6) the particularity with which the documents are described; and (7) the burden imposed on the subpoenaed entity." *OMS Invs., Inc. v. Lebanon Seaboard Corp.*, No. CIV.A.08-2681(AET), 2008 WL 4952445, at \*3 (D.N.J. Nov. 18, 2008); see also *In re Centrix Fin., LLC*, No. CIV.A. 12-6471 AET, 2012 WL 6625920, at \*6 (D.N.J. Dec. 18, 2012). This Court has previously explained that non-parties are "afforded greater protection from discovery than a normal party." *In re Centrix Fin., LLC*, No. CIV.A. 12-6471 AET, 2012 WL 6625920, at \*6 (D.N.J. Dec. 18, 2012), citing *Stamy v. Packer*, 138 F.R.D. 412, 419 (D.N.J.1990) ("Initially, it should be noted that the standards for nonparty discovery require a stronger showing of relevance than for simple party discovery.").

5

Federal Rule of Civil Procedure 26(c) permits a court, for good cause, to issue a protective order to prevent the imposition of an undue burden. Fed. R. Civ. P. 26(c). In examining motions to quash or for a protective order, "'courts weigh the need of the party seeking discovery against the undue hardships created by permitting it." *Linsday v. C.R. Bard, Inc.*, Nos. 1:10–MC–441, 1:10–MC–442, 2011 WL 240104 *1 (M.D. Pa., January 24, 2011)(Caldwell, J.) *citing In re Methyl Tertiary*, 269 F.R.D. 360, 363–64 (S.D.N.Y. 2010).'"

## IV.   ARGUMENT

### A.  Defendants Have Standing To Bring This Motion

As a preliminary matter, Defendants have standing to quash the Subpoenas because the Subpoenas call for the production of Defendants' financial records. "Ordinarily, a motion to quash is made by the recipient of a subpoena; however, 'a party has standing to bring a Motion to Quash or modify a subpoena upon a non-party when the party claims a personal privilege in the production sought.'" *Malhan v. Grewal*, No. CV 16-8495 (CCC), 2020 WL 6391180, at *3 (D.N.J. Nov. 2, 2020) (internal citations omitted). "For example, a party has sufficient standing to challenge a subpoena issued to a bank that seeks disclosure of that party's financial records." *Id.*, quoting *Malibu Media LLC v. Doe*, 2016 WL 3876425, at *3 (D.N.J. July 14, 2016); see also *Thomas v. Marina Assocs.*, 202 F.R.D. 433, 434 (E.D. Pa. 2001) (a party has standing to quash a third-party subpoena if he has "an interest or a claim of privilege relating to" the information sought in the subpoena); 9A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2463.1 (3d ed. 2016) ("Numerous cases have held that a party lacks standing to challenge a [third-party] subpoena absent a showing that the objecting party has a personal right or privilege regarding the subject matter of the subpoena.").

6

Courts in this Circuit have repeatedly confirmed that parties can claim a personal right or privilege with respect to financial records, such as bank account information, and move to quash a subpoena seeking that information. *Schmulovich v. 1161 Rt. 9 LLC*, No. CIV.A. 07-597FLW, 2007 WL 2362598, at *2 (D.N.J. Aug. 15, 2007) (finding that a party had "a personal privilege with respect to their bank account records" and therefore had "proper standing to move to Quash subpoenas on their bank accounts"); *ITOCHU Int'l, Inc. v. Devon Robotics, LLC*, 303 F.R.D. 229, 232 (E.D. Pa. 2014) ("[p]ersonal rights claimed with respect to bank account records give a party sufficient standing to challenge third-party subpoenas served upon financial institutions holding such information.").

Here, the Subpoenas seek all documents related to every penny that Universal received or paid out, every loan or financing transaction in which it has engaged, and bank account information for Universal's owners, Syed and Shamikh Kazmi.  Defendants have standing to ask the Court to prohibit or limit this considerable intrusion into the financial affairs of Universal and its principals.

### B.  This Court Should Quash The Subpoenas Because They Are Overbroad, Unduly Burdensome and a Clear Attempt to Harass Defendants.

As stated above, a court must quash a subpoena if it finds that compliance would subject a person to undue burden. Fed. R. Civ. P. 45(d)(3)(A)(iv). "[C]ourts have significant discretion to quash or modify a subpoena where the discovery sought is irrelevant, or compliance with the subpoena would be unreasonable or oppressive." *Malhan v. Grewal*, 2020 WL 6391180, at *3 (internal citations omitted). Further, courts consider the breadth of the request for the production when considering whether to quash a subpoena (*OMS Invs.*, 2008 WL 4952445, at *3), and this Court has quashed overly broad requests served on non-parties in the past. *See, e.g., Weinstein v. Brisman*, No. CV183910KMMAH, 2020 WL 1485960, at *6 (D.N.J. Mar. 26, 2020) (quashing catch-all requests, including those for "all" communications with non-parties, as "overly broad").

Here, the Subpoenas include requests that go far beyond that which could be reasonably tailored to lead to the discovery of admissible evidence. None of the Items except Item Seven relates in any manner to PMG's claims. PMG must therefore demonstrate that the Subpoenas are tailored to seek information that may lead to the discovery of admissible evidence related to Universal's lost-profits damages. It cannot.

The Subpoenas are on their face overbroad, unduly burdensome and an effort to harass Defendants. The Subpoenas do not seek documents needed to value Universal's lost profits. They seek *all* documents related to *all* accounts used by Universal *and its principals*. They seek *all* documents related to *every* payment received and disbursed and *every* deposit and withdrawal. And they seek *all* documents related to every transaction between Universal and its freight haulers. In essence, the Subpoenas seek an accounting of every penny that has ever passed through not only Universal's accounts, but also any accounts used by its principals. This goes well-beyond that which could be reasonably necessary to discover admissible evidence related to the issue of Universal's lost-profits damages. Because PMG made no effort to tailor the Subpoenas, the Subpoenas should be quashed in their entirety.

**C. Alternatively, This Court Should Enter A Protective Order That Limits The Scope Of the Subpoenas.**

In the alternative, the Court should enter a protective order limiting the scope of the Subpoenas as follows:

1. Universal's bank account statements for the time period January 1, 2021 through August 10, 2021 (the "**Time Period**"), following an opportunity for Defendants to review said statements and, if necessary, redact any trade secret, confidential or other proprietary information that has no relation to this case or Universal's alleged lost profit damages.

8

2. Universal's profit and loss statements and balance sheets for the Time Period.

3. All documents related to transactions between Universal Property Services, Inc. and Petroleum Marketing Group.

This Court has discretion "to issue protective orders that impose restrictions on the extent and manner of discovery where necessary 'to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.'" *Pearson v. Miller*, 211 F.3d 57, 65 (3d Cir. 2000) (quoting Fed. R. Civ. P. 26(c)). For example, courts may enter an order "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." *In re Mushroom Direct Purchaser Antitrust Litig.*, 2012 WL 298480, at *5 (E.D. Pa. Jan. 31, 2012) (quoting Fed. R. Civ. P. 26(c)(1)(7), now codified as Fed. R. Civ. P. 26(c)(1)(G)).

At a minimum, the Subpoenas should be limited by a protective order. The Subpoenas improperly request all manner of non-public financial information of Universal and its principals. The Subpoenas should be constrained to financial documentation necessary to evaluate lost profits related to PMG's termination of the Contract.

## V.    **CONCLUSION**

For the foregoing reasons, Defendants request entry of an Order in the form attached.

Respectfully submitted,

Dated: September 28, 2022

*/s/ Jordan Rand*

Jordan M. Rand, Esq.
**KLEHR HARRISON HARVEY BRANZBURG LLP**
1835 Market Street, Suite 1400
Philadelphia, PA 19103
Telephone: 215-569-3024
jrand@klehr.com
*Attorneys for Defendant Universal Property Services, Inc. and Shamikh Kazmi*

## <u>CERTIFICATION RELATED TO MEETING AND CONFERRING</u>

Per Federal Rule of Civil Procedure 26(c), this is to certify that, on September 23, 2022, the parties met and conferred via telephone conference and made a good faith effort to resolve the dispute without court action. The parties were unable to reach agreement.

Date:  September 28, 2021                                         */s/ Jordan M. Rand*
                                                                                   Jordan M. Rand

**CERTIFICATE OF SERVICE**

I, Jordan M. Rand, hereby certify that on September 28, 2022, the foregoing Defendants'

Motion to Quash Plaintiffs' Subpoenas or In the Alternative For Protective Order was served on

all counsel of record via this Court's electronic filing system.


Date:  September 28, 2021                          /s/ Jordan M. Rand
                                                   Jordan M. Rand

11