**IN THE UNITED STATES DISTRICT COURT
FOR DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| PETROLEUM MARKETING GROUP, INC., | : :  : | |
| **Plaintiff,** | : : | |
| v. | : : | **CIVIL ACTION NO.: 22-2410** |
| UNIVERSAL PROPERTY SERVICES, INC., MR3 LOGISTICS LLC, ORBIT FREIGHT LINES, LLC, and SHAMIKH KAZMI, | : : : : : | |
| **Defendants.** | : : | |
|  | : | |

**PLAINTIFF'S RESPONSIVE STATEMENT TO UNIVERSAL'S
STATEMENT OF MATERIAL FACTS**

Pursuant to Local Rule 56.1, Plaintiff, Petroleum Marketing Group, Inc. ("PMG") responds to Defendant's, Universal Property Services, Inc. ("Universal"), Statement of Undisputed Material Facts, which was included in its Brief in Support of its Partial Motion for Summary Judgment, as follows[1]:

1.       Plaintiff does not dispute that Plaintiff and Universal entered into the Unbranded Sales Agreement ("Contract"), attached to Universal's Motion as Exhibit "3", on February 3, 2021. However, the Parties mutually terminated this Contract in July 2021, as further confirmed and evidenced by their conduct and acts proving that, after termination of their original agreement,

---

[1]       Pursuant to Local Rule of Civil Procedure 56.1, "[e]ach statement of material facts shall be a separate document (not part of a brief) and shall not contain legal argument or conclusions of law." L.Civ.R. 56.1(a). Thus, Plaintiff submits its Responsive Statements to Universal's Statement of Material Facts in a separate document, despite Universal's inclusion of its Statement of Material Facts in its Brief.

they started using new pricing terms and arrangements going forward without having reached any written agreement. Compl. at ¶¶ 39-40; Exhibit "4.

2.     It is disputed that this paragraph contains a complete quote from the 2021 Unbranded Sales Agreement. *See* Universal's Mot. at Ex. 3. Moreover, the Parties mutually terminated that agreement in July 2021, as confirmed and evidenced by their conduct and acts, and documents, showing they were using new pricing formulas going forward without having reached any written agreement. Compl. at ¶¶ 39-40; Exhibit "4".

3.     Disputed. Plaintiff did not unilaterally decide that it needed to change the pricing in the Contract. Gulf, Plaintiff's supplier, informed Plaintiff that as a result of increases in the price of motor fuel in the market, Gulf would begin imposing new pricing on Plaintiff. Compl. at ¶ 37. Plaintiff them promptly informed Universal of this fact. Compl. at ¶¶ 37-39. Universal agreed to "redo" and make a new agreement.  The former agreement was mutually terminated by the parties. Compl. at ¶ 39. After termination of the Contract, the parties entered into an implied agreement until a new written agreement could be executed.

4.     Disputed. Plaintiff did not "demand" that Universal sign a new contract. After Plaintiff informed Universal of the need for the pricing change, Universal agreed to new arrangements and to "redo" the contract. Compl. at ¶ 39. On July 23, 2021, Plaintiff sent Universal the "new agreement." Exhibit "1". Moreover, on July 26, 2021, Universal emailed Plaintiff asking for a proposed termination of the February 3, 2021 Unbranded Sales Agreement. Exhibit "2". Plaintiff promptly provided Universal with a revised agreement adhering to Universal's request for terminating the agreement. Exhibit "3".  The former agreement was mutually terminated by the parties. Universal agreed to a revised unwritten agreement, evidenced by the parties conduct

and actions, whereby Universal agreed to, at a minimum, a revised pricing formula. Compl. at ¶ 39; Exhibit "4".

5.      Disputed. Gulf, Plaintiff's supplier and owner of the terminal where Universal obtained the fuel, notified Plaintiff that if Universal and Plaintiff could not execute a new written contract, Gulf would cut-off the fuel allocation to Universal. Compl. at ¶ 43. Under the Contract, Universal was required to purchase a minimum amount of fuel every week, month, and year. (D.E. 83 at Ex. 3, Ex. "A".) Thus, Gulf, as the owner of the terminal, allocated a specific amount of fuel for Universal to draw. But, as Gulf warned Plaintiff, who immediately informed Universal, if the parties did not execute a written agreement after mutually terminating the original Contract, Gulf would no longer allocate fuel for Universal. Compl. at ¶ 46. PMG promptly informed Universal of this fact. Compl. at ¶ 44. Moreover, Plaintiff informed Universal that it was imperative for Universal to enter into a new agreement, otherwise Gulf would not allocate fuel for Universal. Compl. at ¶ 46. After the parties failed to execute a new written agreement, Gulf no longer allocated fuel for Universal. *See* Compl. at ¶¶ 46 and 49.

6.      Disputed. Universal's and Plaintiff's course of conduct confirm that in July 2021 the parties mutually terminated the original agreement and began operating on different terms, demonstrated by the parties revised agreement as to the higher price. Plaintiff informed Universal that Gulf was billing Plaintiff at the higher price and that in turn, Plaintiff would bill Universal using a new pricing formula. Compl. at ¶ 44. While the parties negotiated a new written agreement, they mutually terminated the Contract and began operating under a new implied agreement. Compl. at ¶ 39. With this knowledge Universal continued to draw fuel from the terminal. On July 22, 2021, Plaintiff informed Universal that it would be billed retroactively "on the new deal".

3

Exhibit "4". Universal did not object to this calculation and paid Plaintiff under the pricing formula in August 2021. Exhibit "6".

7. Disputed. On July 30, 2021, Plaintiff terminated Universal's *contract pin*, not the Contract. The Contract had already been mutually terminated by the parties as evidenced by their conduct, actions, and course of performance. Compl. at ¶ 39-41, 46; Exhibit "4". The "contract pin" is merely a pin number used by Universal to draw fuel at the Woodbury Terminal. Compl. at ¶ 16. Because Universal and Plaintiff did not execute a written agreement after mutually terminating the first agreement, Plaintiff terminated Universal's "contract pin", which prevented Universal from gaining access to the Woodbury Terminal, just as Plaintiff had warned Universal would be the consequence if a new written agreement was not executed. Compl. at ¶¶ 46 and 49. The February 3, 2021 Unbranded Sales Agreement also provided for select instances when, with Plaintiff's approval, Universal would use Plaintiff's rack-pin. Compl. at ¶ 25. Universal and its agents knew Plaintiff's rack pin and used it over the course of the Contract when given permission. *See* Exhibit "5" (WhatsApp Message from Universal to its trucking agent telling it to use Plaintiff's rack pin). After July 30, 2021, while it did not have permission to do so, Universal used Plaintiff's rack pin to remove fuel from the terminal. Compl. at ¶¶ 50-74; Exhibit "5".

8. Disputed. The Parties mutually terminated the Contract in July 2021, as evidenced by their conduct and acts that show an agreement for Plaintiff to bill Universal using a new price formula. Compl. at ¶¶ 39-40; Exhibit "4". Discovery on this issue is still outstanding and has not been taken. For example, depositions of either party concerning the agreement to modify and/or jointly terminate the agreement have not occurred. On February 7, 2023, Plaintiff served its Second Set of Requests for Production upon Universal. Exhibit "8" at ¶ 5. Universal's responses to those Requests are due March 9, 2023. Exhibit "8" at ¶ 6. To fully understand the negotiations between

4

the parties and whether the Contract was terminated before the alleged breach, Plaintiff will need to depose Universal and its principals, including Shamikh and Syed Kazmi. Exhibit "8" at ¶ 10. Plaintiff has not yet deposed Universal or the Kazmis, on this issue or any other issue, because, in an attempt to be economical, Plaintiff plans to depose the two once paper discovery has completed. Exhibit "8" at ¶ 12. The delay in discovery is no fault of Plaintiff, and instead, is a result of Defendants, and their principals[2], consistent failure to abide by the Federal Rules of Civil Procedure and this Court's discovery orders.[3]

Respectfully submitted,

/s/ Frederick P. Santarelli
FREDERICK P. SANTARELLI
ZACHARY R. GREER (admitted *pro hac vice)*
ELLIOTT GREENLEAF, P.C.
UNION MEETING CORPORATE CENTER V
925 Harvest Drive, Suite 300
Blue Bell, PA 19422
215-977-1000
*Counsel for Plaintiff,*
*Petroleum Marketing Group, Inc.*

Dated: March 6, 2023

---

[2]    In September 2022, Plaintiff made three unsuccessful attempts to serve personally serve a Rule 45 Document Subpoena upon Universal's President, Syed Kazmi. Despite evidence that Syed Kazmi lived at the address where Plaintiff attempted to make service, including packages addressed to Syed Kazmi, the residents of the house denied that he lived there. Plaintiff then moved this Court to allow the Subpoena be served by certified mail, return receipt requested, which the Court granted. (D.E. 61); (D.E. 66.) In compliance with the Court's order, on November 8, 2022, Plaintiff served Syed Kazmi by certified mail, return receipt requested. (*See* D.E. 75 at Ex. 1.) Syed Kazmi has not responded to Plaintiff's Subpoena, requiring Plaintiff to file a motion to compel his compliance, which is still pending before the Court. (*See* D.E. 75.)

[3]    As set forth in the Court's March 3, 2023 Letter Order granting Plaintiff's Motion for Sanctions against Defendants, the Court notes that all Defendants, including Universal, failed to meet the deadline for production as to Plaintiff's first requests for production of documents. (D.E. 84 at 6.) The Court also notes that Universal similarly violated two court-ordered deadlines requiring Universal to produce responsive documents and had "no legitimate excuse" as to the violation. (D.E. 84 at 6.) Despite Plaintiff's best interest to move the discovery process along, Defendants' consistent obstruction has impacted Plaintiff's ability to obtain information relevant to its claims and defenses.