**IN THE UNITED STATES DISTRICT COURT
FOR DISTRICT OF NEW JERSEY**

| | |
|---|---|
| PETROLEUM MARKETING GROUP, INC., : <br><br> Plaintiff, : <br><br> v. : <br><br> UNIVERSAL PROPERTY SERVICES, INC., MR3 LOGISTICS LLC, ORBIT FREIGHT LINES, LLC, and SHAMIKH KAZMI, : <br><br> Defendants. : | **CIVIL ACTION NO.: 22-2410** |

**PLAINTIFF'S BRIEF IN SUPPORT OF ITS OPPOSITION TO DEFENDANT
UNIVERSAL PROPERTY SERVICES, INC.'S
PARTIAL MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Petroleum Marketing Group, Inc. ("PMG" or "Plaintiff"), files this Opposition to the Partial Motion for Summary Judgment on Counterclaim Count I, filed by Defendant, Universal Property Services, Inc. ("Universal" or "Defendant").

**I.      Factual History**

Plaintiff filed the Complaint on October 26, 2021 in the Eastern District of Pennsylvania. (D.E. 1.) The case was subsequently transferred to this Court on April 26, 2022. (D.E. 40.) In response to Plaintiff's Complaint, Defendant Universal filed an Answer, and asserted a breach of contract counterclaim. (D.E. 32.) Universal's counterclaim is premised on Plaintiff's alleged breach of the 2021 Unbranded Sales Agreement ("Contract"). (D.E. 83, Exhibit "3".)

In February 2021, Plaintiff and Universal executed the Contract that provided for Plaintiff's sale of motor fuel and/or fuel product to Universal. (D.E. 83, Exhibit "3".) Under the Contract, Plaintiff agreed to provide Universal with motor fuel from Plaintiff's supplier, Gulf Oil ("Gulf"),

who was located at the Woodbury Terminal in West Deptford Township, New Jersey. Compl. at ¶ 12. Plaintiff had its own contract with Gulf. Exhibit "7". Thus, when Universal would remove fuel from the Terminal, Gulf would invoice Plaintiff, who would then invoice Universal. Gulf allocated a certain amount of fuel for Plaintiff to distribute to Universal on a daily basis. Exhibit "7"; (D.E. 83 at Ex. "3".) Plaintiff did not have a physical presence at the Woodbury Terminal. Instead, it was Gulf who was in charge of operations and access to the Terminal.

In July 2021, as a result of an increase in price for motor fuel in the market, Gulf notified Plaintiff that it planned to increase the price for fuel from the Woodbury Terminal. Compl. at ¶ 37. In turn, Plaintiff notified Universal that it too would need to change the pricing formula imposed on Universal. Compl. at ¶ 38. Universal agreed that this change would require the parties to "redo" the Contract. Compl. at ¶ 39. Thus, in July 2021, the parties, as demonstrated by their conduct, actions, and course of performance, mutually terminated the Contract and entered into an implied agreement, evidence by the new interim pricing formula, while the parties negotiated a new agreement. Compl. at ¶¶ 39-40; Exhibit "4. The parties mutually agreed to terminate the Contract, negotiate a new written agreement, and in the meantime, Plaintiff would invoice Universal at the new rate. Compl. at ¶ 39. Universal's agreement to this new implied agreement is evidenced by Universal's payment for fuel under the new pricing formula. Exhibit "6" (wire transfers demonstrating that Universal paid Plaintiff under the new pricing formula in August 2021 for the fuel that Universal drew in July 2021).

Universal's counterclaim stems from its allegation that Plaintiff unilaterally terminated the Contract on July 30, 2021, without 60-days notice as required by the Contract. But the parties had already mutually terminated the Contract by, at the latest, July 26, 2021. On July 30, 2021, after Universal refused to enter in a new written agreement, Plaintiff was required to terminate

Universal's "contract pin." Compl. at ¶ 49. The "contract pin" is merely a pin number used by Universal to enter and obtain fuel at the Woodbury Terminal. Compl. at ¶ 16. It is not in itself a contract. Gulf required Plaintiff and Universal to be bound by an active agreement in order for Gulf to allocate fuel for Universal. Compl. at ¶ 46; Exhibit "3" at 2. Since the parties had mutually terminated the Contract and had not yet entered into a new written agreement, Gulf informed Plaintiff that it would no longer allocate fuel for Universal. Exhibit "3" at 2. Thus, the action that Universal claims was Plaintiff's "termination" of the Agreement was not a "termination" of any agreement, let alone the Contract. Instead, it was Plaintiff's mere removal of Universal's access pin code that allowed entry to the Woodbury Terminal.

Once Universal could no longer use its own "contract pin", it secretly and without permission used Plaintiff's pin to remove fuel for ten (10) days in August 2021 without any detection. Universal has not paid a single penny toward over $490,000 worth of fuel. This stolen fuel is the subject of Plaintiff's claims. *See generally*, Plaintiff's Complaint.

## II.    Argument

### A.  Summary Judgment Standard

Under F.R.C.P. 56, when a party moves for summary judgment, the Court should grant that motion only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." F.R.C.P. 56(a). "A factual dispute is material if it might affect the outcome of the suit under governing law." *Burton v. Teleflex Inc.*, 707 F.3d 417, 425 (3d Cir. 2013). Moreover, "[t]he reviewing court should view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor." *Id.*

F.R.C.P. 56(d) allows a Court to deny or defer consideration of a motion for summary judgment when "a nonmovant shows by affidavit or declaration that, for specified reasons, it

cannot present facts essential to justify its opposition." F.R.C.P. 56(d). An affidavit or declaration under Rule 56(d) "should specify, for example, what particular information is sought; how, if uncovered it would preclude summary judgment; and why it has not previously been obtained." *Gomez v. H&M Int'l Transp., Inc.*, 2021 U.S. Dist. LEXIS 13464, at \*37-38 (D.N.J. Jan. 25, 2021). "Properly filed requests under Rule 56(d) are usually granted as a matter of course, particularly when there are discovery requests outstanding or where relevant facts are under control of the party moving for summary judgment." *Id.* at \*38. Moreover, "[i]f discovery is incomplete, a district court is rarely justified in granting summary judgment, unless the discovery request pertains to facts that are not material to the moving party's entitlement to judgment as a matter of law." *Id.*

**B. Universal's Partial Motion for Summary Judgment Fails to Demonstrate That There Are No Genuine Issues of Material Fact and, That as a Matter of Law, Judgment Should Be Entered in its Favor.**

To succeed on its breach of contract counterclaim, Universal must prove that: (1) a valid contract existed between Universal and PMG; (2) PMG breached the contract; (3) Universal performed its obligations under the contract; and (4) Universal was damaged as a result of the breach. *Farash & Robbins, Inc. v. Fleet Nat'l Bank*, 2005 U.S. Dist. LEXIS 33810, at \*8 (D.NJ. Dec. 16, 2005). Universal's Partial Motion for Summary Judgment asks the Court to determine the first three elements concerning liability, but not the fourth relating to damages.

Universal alleges that Plaintiff committed a breach by terminating the Contract without 60-days' notice. (D.E. 32 at Count I, ¶ 32.) Among the many reasons to deny Universal's motion, there are obviously a number of factual issues at this point, not the least of which is whether the Contract – the underlying premise of Universal's Counterclaim I – was in force at the time Universal alleges Plaintiff breached such agreement. The parties conduct, actions, and course of performance demonstrate that the Contract was mutually terminated and the parties entered an

implied agreement while a new written agreement was negotiated and executed, evidenced by Universal's payment for fuel under the new pricing formula. *See* Compl. at ¶¶ 38-40; Exhibit "2"; Exhibit "3"; Exhibit "4".

New Jersey Courts have adopted the Restatement (Second) of Contracts § 283. *Inter-Regional Disposal & Recycling Servs. v. Housing Auth.*, 2006 N.J. Super. Unpub. LEXIS 1825, at *8 (N.J. Super. Ct. App. Div. July 24, 2006). Section 283 states as follows:

> (1)  An agreement of rescission is an agreement under which each party agrees to discharge all of the other party's remaining duties of performance under an existing contract.
>
> (2)  An agreement of rescission discharges all remaining duties of performance of both parties. It is a question of interpretation whether the parties also agree to make restitution with respect to performance that has been rendered.

Restatement (Second) Contracts ¶ 283.

Moreover, New Jersey Courts recognize that parties, by mutual assent, may abandon a contract. *Cty. of Morris v. Fauver*, 707 A.2d 958, 966 (N.J. 1998). Mutual abandonment and recission under Section 283 have the same effect as mutual termination and relive each party of their obligations under the contract. *Id.*; *Inter-Regional Disposal & Recycling Servs.*, 2006 N.J. Super. Unpub. LEXIS 1825, at *8. "The determination of whether contracting parties intend to abandon their agreement need not be express; it may be inferred from all their acts and circumstances." *Id.* at 96. Here, a genuine issue of material fact exists as to whether the Contract was mutually terminated or active at the time Universal alleges Plaintiff breached it. Obviously, whether the Contract was in force is a material issue as an existing valid agreement is the first required element to establish a breach of contract claim. *Farash & Robbins, Inc.*, 2005 U.S. Dist. LEXIS 33810, at *8.

Before July 30, 2021, the date Universal alleges Plaintiff breached the Contract, the parties mutually terminated the Contract and entered into an implied agreement while they negotiated a new written agreement. The parties' mutual termination is evidenced by their conduct, actions, and course of performance, including the entering into an implied agreement, evidenced by an interim new pricing formula. *See* Exhibit "4"; Compl. at ¶ 39. Indeed, Universal agreed that a new contract would need to be executed to replace the mutually terminated Contract. Compl. at ¶ 39. While not express, the Parties acts infer an intent to mutually terminate the Contract, including Universal's payment to Plaintiff under this new pricing formula. *Cty. of Morris*, 707 A.2d at 966; Exhibit "6" (On August 20, 2021, Universal made a $389,920.32 wire to Plaintiff related to fuel Universal obtained after mutual termination of the Contract). Whether the Contract was an active and enforceable agreement is clearly a material fact, as existence of a valid contract is the first required element for a breach of contract claim. *See Farash & Robbins, Inc.*, 2005 U.S. Dist. LEXIS 33810, at *8. If the parties had terminated the agreement, PMG could not have committed a breach by wrongfully terminating an already terminated contract, as a mutually abandoned or rescinded contract relieves both parties of *all* of their obligations under the contract, not just some. *Cty. of Morris*, 707 A.2d at 966 ("abandonment of a contract is similar to the remedy of rescission, which generally requires that the entire contract be terminated"); *Inter-Regional Disposal & Recycling Servs.*, 2006 N.J. Super. Unpub. LEXIS 1825, at *8.

Universal plainly states that "[i]t cannot be disputed that PMG breached the Contract." (D.E. 83 at 3.) This is incorrect. A genuine dispute of material fact exists as to whether the Contract was mutually terminated as of, at the latest, July 26, 2021 when the parties discussed termination of the "***prior***" contract. *See* Exhibit "2"; Exhibit "3". If it was, PMG could not have breached the Contract. In mid-July 2021, the parties began negotiating a price modification. Discovery into this

issue, mainly by deposition of the parties concerning their negotiations and communications in July 2021 by which the Contract was terminated while the parties operated under different terms.

Even if the Contract was in force, which it was not, Plaintiff's affirmative defenses also prohibit summary judgment from being entered in favor of Universal. For one, Universal breached the Contract when it failed to make payment to Plaintiff within three (3) days of obtaining fuel from the Woodbury Terminal. (D.E. 34, Affirmative Defenses at ¶ 3.) New Jersey law is clear that "[w]hen there is a breach of a material term of an agreement, the non-breaching party is relieved of its obligations under the agreement." *Nolan v. Lee Ho*, 577 A.2d 143, 146 (N.J. 1990). Under the Contract, Universal was required to make payment to Plaintiff within three (3) days of drawing the product from the terminal. (D.E. 83, Ex. "3" at 1.) On July 26, 2021, Plaintiff notified Universal that it would be invoicing Universal under the new pricing formula. Exhibit "3" at 2. At the earliest, Universal did not make payment to Plaintiff for the fuel that it drew in July until August 20, 2021, more than three days after obtaining the fuel. Exhibit "6". Universal drew fuel from the Woodbury Terminal every day of July 2021, with the exception of July 4, 2021. *See* Exhibit "6" at 2-3 (table outlining the amount of fuel taken in July 2021 by Universal). Universal breached the Contract, to the extent that it had not already been mutually terminated, by not tendering payment within three (3) days of removing the fuel. Universal's own breach of the Contract foreclosed its attempt to recover under the Contract it refused to perform. *Nolan*, 577 A.2d at 146 ("When there is a breach of a material term of an agreement, the non-breaching party is relieved of its obligations under the agreement.").

Second, there is, at a minimum, a genuine issue of material fact on whether the parties effected a novation. (D.E. 34, Affirmative Defenses at ¶ 6.) A novation is shown when "(1) a previously valid contract; (2) an agreement to make a new contract; (3) a valid new contract; and

(4) an intent to extinguish the old contract." *Wells Reit II-80 Park Plaza, LLC v. Director, Div. of Taxation*, 999 A.2d 489, 497 (N.J. Super. Ct. App. Div. 2010). New Jersey courts have clearly held that "[b]ecause intent is the primary inquiry, the issue of whether there was a novation is generally a question of fact to be presented to the jury and summary judgment should not be granted." *Id.* at 498.

If the parties agreed to a novation, the Contract would be terminated, and the terms of the new contract would need to be established for Universal to succeed on its claim. *See Wells Reit II-80 Park Plaza, LLC v. Dir., Div. of Taxation*, 999 A.2d 489, 497 (N.J. Super. Ct. App. Div. 2010) ("Unlike a modification which leaves the original contract in place, a novation substitutes a new contract and extinguishes the old one."). Like mutual abandonment or rescission, "[w]hen determining whether a novation occurred, the question is always one of intention." *Id.* Since the elements required to establish a novation rely heavily on the parties' intentions, and since there has been little discovery at this time into such facts, the question cannot be decided on summary judgment at this time. *Burton*, 707 F.3d at 425 ("A factual dispute is material if it might affect the outcome of the suit under governing law.").

Discovery on these above issues is incomplete. *Gomez*, 2021 U.S. Dist. LEXIS 13464, at *37-38 ("[i]f discovery is incomplete, a district court is rarely justified in granting summary judgment"). Thus, after viewing the evidence in the light most favorable to Plaintiff, this Court should deny Universal's partial motion for summary judgment as it has not established that there are no genuine issues of material fact or that Universal is entitled to relief as a matter of law. *Burton*, 707 F.3d at 425 ("A grant of summary judgment is appropriate where the moving party has established "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").

8

**C. In the Alternative, Universal's Partial Motion for Summary Judgment is Premature, and the Court Should Defer Consideration Until Discovery is Complete.**

In the alternative, Plaintiff submits an affidavit pursuant to Rule 56(d), attached hereto as Exhibit "8". Universal has prematurely filed this Motion before the discovery process has fully run its course. As set forth at length above, discovery is needed on a number of issues, including whether the parties mutually terminated the agreement before Plaintiff's alleged breach, whether Universal is barred from recovery because of its previous breach, and whether the parties effected a novation.

As of this date, discovery is ongoing following some delays due to various reasons and motions reflected on the docket. Exhibit "8" at ¶ 4. On February 7, 2023, Plaintiff served its Second Set of Requests for Production upon Universal. Exhibit "8" at ¶ 5. Universal's responses to those Requests are due March 9, 2023. Exhibit "8" at ¶ 6.  To fully understand the negotiations between the parties and whether the Contract was terminated before the alleged breach, Plaintiff will need to depose Universal and its principals, including Shamikh and Syed Kazmi. Exhibit "8" at ¶ 9-10. Plaintiff has not yet deposed Universal or Kazmi because, in an attempt to be economical, Plaintiff plans to depose the two once paper discovery has completed. Exhibit "8" at ¶ 12. Otherwise, there is a chance a second deposition would need to occur if Universal produces new documents. Exhibit "8" at ¶ 12. However, Plaintiff has served corporate designee notices pursuant to Rule 30(b)(6) scheduling depositions of Defendants for April 11 and 13, 2023. Exhibit "8" at Ex. "A" – "E".

Defendants and Syed Kazmi have slowed this process down by ignoring court orders and the Federal Rules of Civil Procedure. (D.E. 84 (Court order granting Plaintiff's motion for sanctions against all Defendants for their failure to abide by this Court's discovery orders)); (D.E. 66 (Order granting Plaintiff's motion for alternative service of a Rule 45 document subpoena on

Syed Kazmi after his multiple attempts to avoid personal service)). As set forth in the Court's March 3, 2023 Letter Order granting Plaintiff's Motion for Sanctions against Defendants, the Court notes that Universal failed to meet the deadline for production as to Plaintiff's first requests. (D.E. 84 at 6.) The Court also notes that Universal similarly violated two court-ordered deadlines requiring Universal to produce responsive documents and had "no legitimate excuse" as to the violation. (D.E. 84 at 6.) Plaintiff has done its best to move the discovery process along in this action. However, because of Universal's delayed and staggered productions, the facts necessary to present an opposition to Universal's motion are in the hands of Universal.

For the reasons set forth above and in Plaintiff's declaration pursuant to F.R.C.P. 56(d), the Court should deny Universal's Partial Motion for Summary Judgement, or, at a minimum, defer consideration of Universal's Motion until full discovery on this issue has completed.

### III.    Conclusion

For the foregoing reasons, Plaintiff respectfully requests that this Court deny Universal's Partial Motion for Summary Judgment on Counterclaim Count I. In the alternative, Plaintiff respectfully requests that the Court defer consideration on this issue until discovery has completed and Plaintiff has a full opportunity to respond to Universal's Partial Motion for Summary Judgment.

Respectfully submitted,

/s/ Frederick P. Santarelli
FREDERICK P. SANTARELLI
ZACHARY R. GREER (admitted *pro hac vice)*
ELLIOTT GREENLEAF, P.C.
UNION MEETING CORPORATE CENTER V
925 Harvest Drive, Suite 300
Blue Bell, PA 19422
215-977-1000

*Counsel for Plaintiff,*
*Petroleum Marketing Group, Inc.*

Dated: March 6, 2023