IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| PETROLEUM MARKETING GROUP, INC., | Civ. Act. No. 3:22-cv-2410-RK-RLS |
| | *Consolidated With* |
| PLAINTIFF, | Civ. Act. No. 3:23-cv-22418-RK-RLS |
| v. | |
| SYED KAZMI, SHAMIKH KAZMI, UNIVERSAL PROPERTY SERVICES, INC., and UNIVERSAL GROUP COMPANY, INC. | |
| DEFENDANTS | |

# PLAINTIFF PETROLEUM MARKETING GROUP, INC.'S BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

FREDERICK P. SANTARELLI
KYLE M. ELLIOTT
ELLIOTT GREENLEAF, P.C.
925 Harvest Drive, Suite 300
Blue Bell, PA 19422
*Counsel for Plaintiff*
*Petroleum Marketing Group, Inc.*

Dated: August 20, 2026

**TABLE OF CONTENTS**

I. INTRODUCTION AND FACTUAL BACKGROUND........................ 2

II. QUESTIONS INVOLVED.......................................... 5

III. ARGUMENT.................................................. 5

A. PMG Is Entitled to Summary Judgment on its Breach of Contract (Count III) Claim against Syed........................................... 6

B. PMG Is Entitled to Summary Judgment on its Fraud Claim (Count I)................................ 8

C. PMG Is Entitled to Summary Judgment on its Negligence Claim (Count IV)........................ 11

D. PMG Is Entitled to Summary Judgment on its Civil Conspiracy Claim (Count II)................... 13

E. PMG Is Entitled to Attorneys’ Fees and Damages........ 15

IV. CONCLUSION.......................................... 16

# TABLE OF AUTHORITIES

**Cases**

*Banco Popular N. Am. v. Gandi*,
184 N.J. 161, 876 A.2d 253 (2005) .......................... 13

*Berckeley Inv. Grp. v. Colkitt*,
455 F.3d 195 (3d Cir. 2006) ................................. 5

*Bowen v. Parking Auth. of City of Camden*,
2003 WL 22145814 (D.N.J. Sept. 18, 2003) ................ 14, 15

*CW Int'l Sales LLC v. Glob. Source, Ltd.*,
2024 WL 1521355 (D.N.J. Apr. 8, 2024) ................... 12, 13

*Dominion Res. Servs., Inc. v. 5K Logistics, Inc.*,
2010 WL 917492 (E.D. Va. Mar. 8, 2010) ................... 7, 16

*Enomoto v. Space Adventures, Ltd.*,
624 F. Supp. 2d 443 (E.D. Va. 2009) ......................... 6

*Fantastic Sams Franchise Corp. v. Weekes*,
2023 WL 2696595 (D.N.J. Mar. 29, 2023) ...................... 5

*Gennari v. Weichert Co. Realtors*,
691 A.2d 350 (N.J. 1997) .................................. 11

*Highlands Ins. Co. v. Hobbs Group, LLC*,
373 F.3d 347 (3d Cir. 2004) ................................ 12

*Jewish Ctr. of Sussex Cnty. v. Whale*,
432 A.2d 521 (N.J. 1981) .................................... 9

*John Wiley & Sons, Inc. v. Rivadeneyra*,
179 F. Supp. 3d 407 (D.N.J. 2016) .......................... 14

*Jumara v. State Farm Ins. Co.*,
55 F.3d 873 (3d Cir. 1995) .................................. 6

*Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C.*,
331 F.3d 406 (3d Cir.2003) ................................. 13

*Nahas v. Foxhill Cap. Partners*,
2023 WL 8253047 (D.N.J. Nov. 29, 2023) ...................... 8

*Parikh v. Fam. Care Ctr.*, Inc.,
641 S.E.2d 98 (Va. 2007) .................................... 6

*Robert L. Ferman & Co. v. General Magnaplate Corp.*,
33 F.R.D. 326 (D.N.J. 1963) .................................. 8

*Sandoz Inc. v. United Therapeutics Corp.*,
2022 WL 17335696 (D.N.J. Mar. 30, 2022) ...................... 8

*State, Dep't of Treasury, Div. of Inv. ex rel. McCormac v. Qwest Commc'ns Int'l, Inc.*,
904 A.2d 775 (N.J. Super. App. Div. 2006) ................ 9, 10

*Vance v. Scerbo*,
2019 WL 960245 (N.J. Super. Ct. App. Div. Feb. 26, 2019) ..... 8

*Wiatt v. Winston & Strawn LLP*,
838 F. Supp. 2d 296 (D.N.J. 2012) .......................... 12

**Statutes**

Va. Code § 11-2(4)........................................... 7

**Rules**

Fed.R.Civ.P. 12.............................................. 6

Fed.R.Civ.P. 56.............................................. 1

**Other Authorities**

Restatement (Second) of Torts § 552......................... 12

Plaintiff Petroleum Marketing Group, Inc. ("Plaintiff" or "PMG") submits this Brief in Support of its Motion for Summary Judgment pursuant to Fed.R.Civ.P. 56 on all of Plaintiff's claims:

- Count I (fraud against all Defendants Syed Kazmi ("Syed"), Shamikh Kazmi ("Shamikh"), Universal Property Services, Inc. ("Universal Property"), and Universal Group Company ("Universal Group");
- Count II (civil conspiracy against all Defendants);
- Count III (breach of contract against Syed); and
- Count IV (negligence against all Defendants).

In the consolidated separate Civil Action No. 3:22-cv-2410-RK-RLS (D.N.J.), the Court has already entered an Order & Judgment, including against Universal Property and Shamikh, as well as the trucking companies with whom they stole PMG's petroleum product from the Woodbury, NJ Gulf Terminal as set forth below. (No. 3:22-cv-2410, Doc. 159.)[1]

On August 14, 2026, the Court entered an Order to Show Cause to Defendants as to why the Court should not impose sanctions against Defendants or issue other appropriate orders. (Doc. 163.) For the following reasons, PMG also respectfully requests that the Court enter summary judgment against Defendants.

[1] There was no appeal from the judgment entered in that case, said judgment which is final and subject to execution.

## I. INTRODUCTION AND FACTUAL BACKGROUND

The undisputed facts supporting PMG's Motion for Summary Judgment are stated in the Undisputed Material Facts submitted contemporaneously herewith, and are incorporated herein by reference.[2] PMG now moves for summary judgment on Counts I-IV of its November 16, 2023, Complaint. (Ex. "1", No. 3:23-cv-22418, Doc. 1, Compl.)

The claims arise from Defendants' fraudulent misconduct in their unscrupulous business dealings with PMG, a fuel distributor. Defendants' misconduct includes theft of PMG's fuel product from Gulf Oil's Woodbury Terminal in West Deptford, New Jersey ("Gulf Terminal") in August 2021. Defendants Shamikh and Syed, who are brothers, used Universal Property, and Universal Group for purchasing and reselling petroleum product which they purchased from multiple suppliers, including PMG. In July 2020, Shamikh, through Universal Property, approached PMG requesting to enter into a business arrangement to purchase fuel. Before PMG would enter into a business relationship with Universal Property and Shamikh, PMG required execution of an Application of Commercial Credit ("Credit Application"). Thereafter, in July 2021, Shamikh

[2] "[A]ny material fact not disputed [by the opposing party] shall be deemed undisputed for purposes of the summary judgment motion." L. Civ. R. 56.1(a). Plaintiff's Statement of Undisputed Material Facts will be referenced as "PSUMF" where appropriate.

emailed to PMG a fully executed Credit Application, which listed Syed as the Chief Executive Officer of Universal Property.

The Credit Application attached and incorporated the Agreement titled "Petroleum Marketing Group Account Conditions" ("Account Conditions Agreement"). Syed executed the Account Conditions Agreement, as well as a personal guaranty agreement (all collectively, the "Agreements"). Unbeknownst to PMG at the time, the Agreements were replete with material falsehoods, including, by way of example only, that Syed had *not executed or provided any other guarantees*, that Universal Property had no judgments or tax liens entered against it, and that Universal Property *did not* conduct business in any state other than New Jersey.

In reliance upon these and other representations, PMG extended credit for Universal Property to purchase PMG's fuel product. As part of this business relationship, PMG required Universal Property to execute an "ACH Authorization" form permitting PMG to draw from a designated bank account the amounts owed for the fuel Universal Property purchased from PMG (as is customary in the industry). Syed executed two ACH authorization forms: the M&T Authorization, and TD Authorization. The M&T Authorization falsely identified that account as being controlled by Universal Property, but it was not. In fact, Universal Group actually controlled the M&T Bank account. PMG began drawing from

the Universal Group M&T Bank account in or around January 2021. These payments enabled Defendants' ongoing fraudulent scheme and permitted Defendants to continue to conduct their business and credit relationship with PMG. Universal Group participated in this scheme by using its bank account under a deceptively similar name to Universal Property – both companies that Shamikh and Syed created and control.

The parties mutually terminated this business relationship in July 2021. Despite this termination and revocation of Universal Property's authority to withdraw PMG's fuel product, PMG discovered after-the-fact that, in August 2021, Defendants had surreptitiously gained access to the Gulf Terminal under false pretenses and stole hundreds of thousands of dollars' worth of fuel from the Gulf Terminal. After this was discovered, PMG demanded, and Defendants refused, to pay the amount owed to PMG for the petroleum product.

PMG attempted to recover payment of the stolen fuel product by drawing funds from Universal Group's M&T Bank account in accordance with the M&T Authorization. In furtherance of Defendants' fraudulent conduct, however, Syed, on behalf of Universal Group, directed M&T to refuse the draws based on false representations made to M&T Bank. Syed also defaulted on his personal guaranty by refusing to pay Universal Property's debts owed to PMG on account of the stolen fuel product.

Defendants have no legitimate defense for their frauds and thefts. They have disregarded Court orders in this and the related action in this Court. In the meantime, their victim, PMG, has been deprived of the hundreds of thousands of dollars owed over the course of the last five years for the stolen fuel product. As set forth in PMG's summary judgment motion, supporting exhibits, and evidence, the Court should grant judgment for PMG because there is no genuine dispute as to any material fact and PMG is entitled to judgment as a matter of law.

## II. QUESTIONS INVOLVED

Whether Plaintiff is entitled to summary judgment?

**Answer: Yes.**

## III. ARGUMENT

A court should grant summary judgment where the record evidence shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Berckeley Inv. Grp. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006). "The dispute is not genuine if it merely involves some metaphysical doubt as to the material facts." *Fantastic Sams Franchise Corp. v. Weekes*, No. Civ. No. 3:21-cv-17733, 2023 WL 2696595, *3 (D.N.J. Mar. 29, 2023) (quotation and citation omitted).

### A. PMG Is Entitled to Summary Judgment on its Breach of Contract (Count III) Claim against Syed.

PMG asserts a breach of contract claim against Syed based on his personal guaranty agreement. (Ex. "1", Compl. ¶¶89-100.) Paragraph 13 of the guaranty agreement provides that it is governed by Virginia law.[3] (Ex. "1-2" ¶13.)

Under Virginia law, consistent with New Jersey law, the elements of a breach of contract "are: (1) a legally enforceable obligation of a defendant to a plaintiff, (2) the defendant's violation or breach of that obligation, and (3) resulting injury or harm to the plaintiff." *Enomoto v. Space Adventures, Ltd.*, 624 F. Supp. 2d 443, 449 (E.D. Va. 2009) (citation omitted). The interpretation of a contract presents a question of law, and where, as here, "the terms in a contract are clear and unambiguous, the contract must be construed according to its plain meaning." *Parikh v. Fam. Care Ctr.*, Inc., 641 S.E.2d 98, 100 (Va. 2007) (citation omitted).

[3] Paragraph 14 of the Guaranty Agreement contains a venue selection clause, which Defendants have waived. *See Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 884 n.2 (3d Cir. 1995) (Garth, J., dissenting) ("[V]enue is a privilege provided to the defendant, that this privilege may be waived, and that it is waived if it is not expressly asserted. . . . Moreover, Fed.R.Civ.P. 12(b)(3) requires that a defense of improper venue be raised in the responsive pleadings or by motion, or it will be deemed waived.").

There is no dispute that: (1) a valid contract exists; (2) Universal Property breached its duties to pay PMG for the petroleum product, and Syed breached his duty to pay Universal Property's debt; and (3) the breaches resulted in hundreds of thousands of dollars' worth of damages to PMG (i.e. the value of the stolen fuel product) which remains unpaid.

First, there is no dispute that PMG entered into a valid contract, the Credit Application, with the Accounts Condition Agreement, and guaranty agreement executed by Syed. (Exs. "1-1 & 1-2"; PSUMF ¶¶9-10); *See also* Va. Code § 11-2(4)(requiring agreement to be signed by party to be charged to promise to answer the debt of another).

Second, there is no dispute that Universal Property breached its duty to pay PMG for the petroleum product, and Syed breached his duty to pay Universal Property's debt owed to PMG. (PSUMF ¶¶68, 71, 74-84.)

Third, there is no dispute that PMG suffered damages in at least the amount of $390,516.86, i.e. the value of fuel stolen from the Gulf Terminal, plus 18% interest per annum until paid. (Ex. "1-2" ¶1; PSUMF ¶¶80-81.)

Accordingly, the Court should enter summary judgment against Syed, and in favor of PMG on the breach of contract claim (Count III). *Accord Dominion Res. Servs., Inc. v. 5K Logistics, Inc.*, No. 3:09-CV-315, 2010 WL 917492, at *8 (E.D. Va. Mar. 8, 2010)

(applying Virgina law and fining "summary judgment should be granted to [plaintiff] on both the question of [defendant's] liability under the Contract and the amount [defendant's] liability, which totals $192,072.50 in damages, plus fees and costs."); *Sandoz Inc. v. United Therapeutics Corp.*, No. 2:19-CV-10170, 2022 WL 17335696, at *19–20 (D.N.J. Mar. 30, 2022) (granting summary judgment on plaintiff's breach of contract claim); *Robert L. Ferman & Co. v. General Magnaplate Corp.*, 33 F.R.D. 326, 331-32 (D.N.J. 1963) (same).[4]

**B. PMG Is Entitled to Summary Judgment on its Fraud Claim (Count I).**

In Count I, PMG alleges Defendants committed common law fraud by, *inter alia*, submitting the executed Credit Application to PMG containing multiple false representations and omissions of material fact. (Ex. "1", Compl. ¶¶ 65-77.)

In New Jersey, a plaintiff may proceed on a common law fraud theory based on a defendant's omission. In such scenarios, a "plaintiff must show that defendant: (1) made a representation or omission of a material fact; (2) with knowledge of its falsity; (3) intending that the representation or omission be relied upon; (4) which resulted in reasonable reliance; and that (5) plaintiff suffered damages." *Vance v. Scerbo*, No. A-2019-17T4, 2019 WL

[4] Virginia and New Jersey breach of contract law are consistent. *See Nahas v. Foxhill Cap. Partners*, No. Civ. No. 21-7740, 2023 WL 8253047, *5 (D.N.J. Nov. 29, 2023) (citation omitted).

960245, at *5 (N.J. Super. Ct. App. Div. Feb. 26, 2019) (quotation and citation omitted); *see also Jewish Ctr. of Sussex Cnty. v. Whale*, 432 A.2d 521, 524 (N.J. 1981) ("fraud may be either actual or constructive"). Moreover, "[a] claim for aiding and abetting fraud also requires proof of the underlying tort[.]" *State, Dep't of Treasury, Div. of Inv. ex rel. McCormac v. Qwest Commc'ns Int'l, Inc.*, 904 A.2d 775, 784 (N.J. Super. App. Div. 2006).

In this action, the record establishes that Defendants committed fraud by inducing PMG to enter into the business and credit relationship based on the Credit Application that Syed executed and Shamikh submitted to PMG. Furthermore, Shamikh knowingly assisted the fraud, including regarding the Credit Application that contained multiple false representations and omissions of material fact. For example, at the time in July 2020 when Syed executed the Credit Application and guaranty:

- Syed falsely represented that he was not a guarantor for any other loans or credit agreements, which is false. However, undisputed evidence establishes he was already the guarantor of agreements with 7-Eleven, M2, Stearns Bank, Circle K (seventeen of them), Full Circle, Sunbridge, and NewLane (PSUMF ¶¶38-39);

- Syed falsely represented that there were no judgments against him or Universal Property. As of the time he executed the guaranty, there were at least two judgments entered against Syed in the *M2 Lease Funds*, and *Pujara* cases (PSUMF ¶45); and

- Syed falsely represented that neither he nor Shamikh ever conducted business under another name and / or conducted business in a different state (other than New Jersey). The undisputed evidence establishes that the Kazmi Brothers owned

or served as officers for at least three other companies: KRSM, Diwan, and Aqri (PSUMF ¶¶50-53.)

- Moreover, Universal Property admitted on March 26, 2020, in its Complaint filed in this same District Court that it conducted business, and entered into seventeen supply agreements, in Florida in the *Lehigh Gas* litigation (PSUMF ¶53.)

PMG relied on these fraudulent misrepresentations. It would not have entered into any business relationship with Defendants or extend credit to Universal Property had it known these representations were false. (PSUMF ¶61.)

Shamikh aided and abetted this fraudulent conduct by submitting the Credit Application on behalf of his brother, Syed, and Universal Property by email on or about July 21, 2020. (Ex. "Ex. "3"; PSUMF ¶10.)

Universal Group substantially assisted in furthering the fraud, including by making payments on behalf of the other Defendants to PMG, enabling and continuing the ongoing fraudulent scheme, and then preventing PMG from drawing further payment from the M&T Bank account for the petroleum product that Defendants stole from the Gulf Terminal. (PSUMF ¶¶28, 64-69.) *See Qwest Commc'ns Int'l, Inc.*, 904 A.2d at 784 (aiding and abetting fraud established where defendant knowingly and substantially assisted other defendants "with the creation and implementation of fraudulent accounting schemes to implement the fraud").

Lastly, PMG suffered damages as result of the hundreds of thousands of dollars' worth of petroleum product being stolen by Defendants from the Gulf Terminal in August 2021. (PSUMF ¶¶80-81.)

In light of the uncontroverted material facts on the record before this Court, summary judgment should be granted in favor of PMG, and against Defendants on Count I (fraud). *See Gennari v. Weichert Co. Realtors*, 691 A.2d 350, 367–68 (N.J. 1997) (defendants liable for common law fraud where "Allen and Ellen knew that Allen's experience and qualifications were not as they represented. They induced the purchasers to rely on their representations that Allen had many years of experience, finished construction on schedule, and was a craftsman. None of the statements was true. The purchasers, however, relied on those misrepresentations to their detriment.").

### C. PMG Is Entitled to Summary Judgment on its Negligence Claim (Count IV).

In Count IV, PMG alleges that Defendants' misrepresentations and omissions of material facts as advanced in its fraud claim (Count I), were also (at a minimum) negligent. (Ex. "1", Compl. ¶¶ 101-10.)

Under New Jersey law, a claim for negligent misrepresentation is necessarily proven if the claim for fraudulent misrepresentation is proven. In any event, here, both fraud and

negligent misrepresentation are proven by essentially the same evidence. "[A] plaintiff must allege that 'defendant negligently provided false information and that plaintiff incurred damages proximately caused by its reliance on that information.'" *Wiatt v. Winston & Strawn LLP*, 838 F. Supp. 2d 296, 312 (D.N.J. 2012) (quoting *Highlands Ins. Co. v. Hobbs Group, LLC*, 373 F.3d 347, 351 (3d Cir. 2004)). To prevail on this claim, a plaintiff must show that a defendant owed it a duty of care, *Highlands Ins. Co.*, 373 F.3d at 351, which is a question of law for the Court to determine. *CW Int'l Sales LLC v. Glob. Source, Ltd.*, No. CV 22-06120 (RK) (RLS), 2024 WL 1521355, *3 (D.N.J. Apr. 8, 2024); *see also id.* ("[D]efendant may therefore owe a duty and be held liable to any reasonably foreseeable recipient who relies on the information the defendant provides.") (quotation and citation omitted).

As set forth above in section III(B), Defendants made false representations in the Credit Application, for which PMG incurred damages. Universal Group owed a duty to PMG not to misrepresent and / or omit material facts to PMG, and caused PMG to continue extending credit to Syed and Universal Property. *See id.* (noting New Jersey's adoption of Restatement (Second) of Torts § 552 and explaining "knowledge of a misrepresentation gives rise to a duty of care with regard to communicating that misrepresentation if the plaintiff is a reasonably foreseeable recipient of [the] misinformation who relied on the information") (citation and

quotation omitted, brackets in original). The Kazmi Brothers, in their individual capacities as agents, corporate officers, and / or directors of Universal Property, and Universal Group, participated in the conduct relating to the misrepresentations and omissions to PMG, by *inter alia*, executing and providing the Credit Application to PMG. *Id.*

Consequently, summary judgment should be granted in favor of PMG, and against Defendants on Count IV (negligence).

**D. PMG Is Entitled to Summary Judgment on its Civil Conspiracy Claim (Count II).**

PMG has also proven the civil conspiracy claim in connection with the fraud committed by Defendants, as shown in section III(B). (Ex. "1", Compl. ¶¶ 78-87.)

Courts in this District have confirmed:

> Under New Jersey law, a civil conspiracy is "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, a principal element of which is to inflict a wrong against or injury upon another, and an overt act that results in damage." *Banco Popular N. Am. v. Gandi*, 184 N.J. 161, 177, 876 A.2d 253 (2005). The necessary elements of a civil conspiracy are: (1) a combination of two or more persons; (2) a real agreement or confederation with a common design; (3) the existence of an unlawful purpose, or a lawful purpose to be achieved by unlawful means; and (4) special damages. *Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C.*, 331 F.3d 406, 414 (3d Cir.2003).

*John Wiley & Sons, Inc. v. Rivadeneyra*, 179 F. Supp. 3d 407, 411-12 (D.N.J. 2016). It is well settled that "plaintiffs are not required to provide direct evidence of the agreement between the conspirators" because the nature of a conspiracy is such that more often than not the only type of evidence available is circumstantial in nature." *Bowen v. Parking Auth. of City of Camden*, No. CIV. 00-5765, 2003 WL 22145814, at *37 (D.N.J. Sept. 18, 2003) (quotation and citation omitted).

The Kazmi Brothers agreed and conspired amongst themselves, and those acting on concert with them, in a course of conduct to fraudulently induce PMG to extend credit to, and to enter and continue the business relationship with, Universal Property. *See* (PSUMF ¶¶7-28, 34-61.) The Kazmi Brothers agreed with each other, and the officers, directors, and / or employees of Universal Property, to submit the fraudulent Credit Application to PMG (which they knew contained material misrepresentations and omissions of fact) in order to obtain credit and do business with PMG, and to continue the ongoing fraudulent scheme. (PSUMF ¶¶9-61.)

For example, Shamikh aided and abetted the fraud by submitting the Credit Application, executed by Syed, to PMG by email on or about July 21, 2020. (Ex. "3"; PSUMF ¶10.)

At least by January 2021, Universal Group joined the conspiracy when its officers, agents, directors, and employees agreed with the other Defendants to direct PMG to draw the amounts

owed by Universal Property for the fuel that Universal Property obtained on credit as a result of the Credit Application. (PSUMF ¶¶.)

Syed, Shamikh, and Universal Property used Universal Group's M&T Bank account in order to satisfy other outstanding obligations to PMG, and to continue using Universal Group's M&T Bank account for future fuel purchases from PMG, thereby making UNIVERSAL GROUP responsible for Defendants' continued ongoing fraudulent acts. (PSUMF ¶¶23, 28.) Indeed, Universal Group further acted to advance the conspiracy when it blocked PMG's attempts to draw from the M&T account in August 2021, including providing M&T Bank with false representations concerning the parties' business relationship and authority to make such draws. (PSUMF ¶69.)

PMG thus suffered damages including but not limited to nonpayment of the balance owed by Universal Property for the fuel that was stolen from the Gulf Terminal in August 2021, and the loss of time value of such amounts. (PSUMF ¶¶80-82.)

Accordingly, summary judgment should be entered in favor of PMG, and against Defendants on Count II (civil conspiracy). *Cf. Bowen*, 2003 WL 22145814, *37-39.

**E. PMG Is Entitled to Attorneys' Fees and Damages.**

As set forth above, PMG is entitled to damages on its claims against Defendants in the amount of $390,516.86. Plaintiff will also file a statement of attorneys' fees, which Defendants are

liable for, should summary judgment be granted on the breach of contract cause of action in light of the written provisions providing for the recovery of PMG's attorneys' fees and costs. *See* (Ex. "1-1" ¶3, PAYMENT TERMS) ("Applicant agrees to pay all costs and expenses incurred by [PMG] in collecting the amounts owed by Applicant under this Agreement, including all attorney's fees and court costs actually incurred by [PMG]."); (Ex. "1-2" ¶5, Costs of Collection.) ("Each of the Guarantors shall, upon demand, pay all costs and expenses incurred by [PMG] in connection with the enforcement or collection of the obligations of the enforcement of this Guaranty, including attorney fees of 25% of the total amount owed.") (emphasis in original). *See Dominion Res. Servs., Inc.*, 2010 WL 917492, at *6 (awarding damages at summary judgment phase where damages are reasonable and certain).

**IV. <u>CONCLUSION</u>**

For all of the foregoing reasons, Plaintiff Petroleum Marketing Group, Inc. respectfully requests that the Court enter summary judgment in favor of Plaintiff and against Defendants on all of Plaintiff's claims, consistent with the accompanying proposed order.

Respectfully submitted,

*/s/ Frederick P. Santarelli*

FREDERICK P. SANTARELLI (NJ 033291988)
KYLE M. ELLIOTT (NJ 033392009)
ELLIOTT GREENLEAF, P.C.
925 Harvest Drive, Suite 300
Blue Bell, PA 19422

FPSantarelli@elliottgreenleaf.com
kme@elliottgreenleaf.com
(215) 977-1000 (phone)

Dated: August 20, 2026

***Counsel for Plaintiff Petroleum Marketing Group, Inc.***

**CERTIFICATE OF SERVICE**

The undesigned hereby certifies that on this day a copy of the foregoing was served on all counsel of record by the Court's electronic filing system.

*/s/ Frederick P. Santarelli*
FREDERICK P. SANTARELLI (NJ 033291988)
KYLE M. ELLIOTT (NJ 033392009)
ELLIOTT GREENLEAF, P.C.
925 Harvest Drive, Suite 300
Blue Bell, PA 19422

FPSantarelli@elliottgreenleaf.com
kme@elliottgreenleaf.com
(215) 977-1000 (phone)

Dated: August 20, 2026

***Counsel for Plaintiff Petroleum Marketing Group, Inc.***